```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -:
JUCIALAINE BITTENCOURT,              :    15 Civ. 0499 (JPO) (JCF)
individually and in behalf of all    :
other persons similarly situated,    :
                                     :
                                     :        MEMORANDUM
                      Plaintiff,     :        AND  ORDER
                                     :
       - against -                   :
                                     :
FERRARA BAKERY & CAFÉ INC., FERRARA  :
FOODS & CONFECTIONS, INC., ERNEST    :
LEPORE, and ADELINE LEPORE SESSA,    :
jointly and severally,               :
                                     :
                      Defendants.    :
- - - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Plaintiff Jucialaine Bittencourt brings this action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL"), seeking compensation for wage violations allegedly committed by her employers, Ferrara Bakery & Café, Inc., Ferrara Foods & Confections, Inc., Ernest Lepore, and Adeline Lepore Sessa. The plaintiff now moves for an order (1) conditionally certifying a collective action pursuant to 29 U.S.C. § 216(b); (2) approving the proposed notice and consent form for mailing to putative plaintiffs; (3) requiring the defendants to post the notice and consent form in their place of business; and (4) permitting all similarly situated individuals 90 days to opt into this case. For the reasons that follow, the plaintiff's motion is granted in part and denied in part.[1]

---

[1] A United States Magistrate Judge has the authority to rule on a motion to authorize a collective action. See Harper v. Government Employees Insurance Co., 826 F. Supp. 2d 454, 456 (E.D.N.Y. 2011); Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194,

Background

The defendants own and operate a restaurant located at 195 Grand Street in Manhattan. (Complaint ("Compl."), ¶ 14). The plaintiff was employed by the defendants as a waitress between September 2005 and December 2014. (Declaration of Jucialaine Bittencourt dated July 14, 2015 ("Bittencourt Decl."), ¶¶ 3-4).

Ms. Bittencourt alleges that the defendants failed to pay her the minimum wage. Prior to 2012, the defendants failed to pay her an hourly wage and, after April 2012, the defendants paid her an hourly wage of $5.00. (Bittencourt Decl., ¶ 6). Further, the plaintiff alleges that the defendants did not inform her of the tip credit and did not keep track of tips. (Bittencourt Decl., ¶ 10). She asserts that other individuals working for the defendants were similarly deprived of lawful pay. (Bittencourt Decl., ¶ 9). In addition, Czako Zsolt, who was employed by the defendants as a waiter from March 2012 to June 2012 and again from September 2012 to September 2013, has submitted an affidavit alleging that the defendants paid him an hourly wage of $4.65 and did not inform him of the tip credit. (Declaration of Czako Zsolt dated June 21, 2015 ("Zsolt Decl."), ¶¶ 3-4, 6. Mr. Zsolt also alleges that he observed the defendants paying other waiters an hourly wage of $4.65. (Zsolt Decl., ¶ 8).

The plaintiff initiated this action on January 22, 2015. She alleges that she is entitled to (1) unpaid minimum wages, (2) unpaid uniform maintenance pay, (3) reimbursement of required

_____

2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).

uniform costs, (4) liquidated damages, (5) statutory damages, and (6) attorneys' fees and costs, all arising out of the defendants' violations of the FLSA and NYLL.  (Compl., ¶ 65).  The plaintiff now seeks collective action status for "all non-exempt hourly employees of the defendants who were employed at any time after three years before the date of [the] complaint."  (Proposed Order Conditionally Certifying Collective Action ("Proposed Order"), ¶ 2).  The defendants oppose conditional certification on the grounds that the plaintiff has not established a common unlawful policy in violation of the FLSA and argue that if conditional certification is to be granted, it should only be granted as to waitstaff.  The defendants also challenge the plaintiff's proposed notice.

Discussion

    A. Legal Standard

Under the FLSA, plaintiffs may elect to seek certification to proceed as a collective action.  See 29 U.S.C. § 216(b); Iglesias-Mendoza v. LaBelle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007).  The Second Circuit has endorsed a two-step method to certify FLSA collective actions.  Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).  The first step -- the current stage of this litigation -- requires the district court to determine whether there are "similarly situated" potential plaintiffs who should receive notice of the pending FLSA action and have an opportunity to join it.  Id.

Unlike under Rule 23 of the Federal Rules of Civil Procedure, the size of the putative class is not material to certifying a collective action under the FLSA -- indeed, "no showing of

numerosity, typicality, commonality and representativeness need be made." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (quoting Foster v. Food Emporium, No. 99 Civ. 3860, 2000 WL 1737858, at *1 (S.D.N.Y April 26, 2000); see also Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) ("Even if the group of eligible plaintiffs is small, they all 'have a right to notice of these claims and an opportunity to join this action.'") (quoting Davis v. Lenox Hill Hospital, No. 03 Civ. 3746, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004)).  Instead, the threshold question is whether the plaintiffs have shown that the proposed members of the collective action are "similarly situated."  See, e.g., Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579, 2008 WL 938584, at *1 (S.D.N.Y. April 7, 2008); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).  The term "similarly situated" is not defined by the FLSA or its implementing regulations. Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997); accord Iglesias-Mendoza, 239 F.R.D. at 367.  However, courts have determined that the applicable test is whether the plaintiffs have established a sufficient "factual nexus" between their claims and the potential claims of other putative collective action members. See, e.g., Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007); Young, 229 F.R.D. at 54.  Courts may approve sending notice if "plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  Myers, 624 F.3d at 555 (quoting Hoffman, 982 F. Supp. at 261).

In making this showing, plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members.  See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) ("[T]he appropriate inquiry . . . is whether the putative class alleged by Plaintiffs is similarly situated based on the pleadings and any affidavits."); Prizmic v. Armour, Inc., No. 05 CV 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("[M]ere allegations in the complaint are not sufficient [to meet the plaintiff's burden on a motion for collective action certification]; some factual showing by affidavit or otherwise must be made.") (quoting Camper v. Home Quality Management Inc., 200 F.R.D. 516, 519 (D. Md. 2000)).  A court "need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice," Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006), nor "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," Cunningham v. Electronic Data Systems Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting Lynch v. United Services Automobile Association, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).  However, the evidence must be "sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law."  Realite, 7 F. Supp. 2d at 306. Furthermore, the plaintiff's supporting allegations must be

specific, not conclusory.  Morales v. Plantworks, Inc., No. 05 Civ. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006).

The second stage of collective active certification occurs after notice is sent, the opt-in period concludes, and discovery closes.  At the second stage, which involves a "more stringent factual determination," Lynch, 491 F. Supp. 2d at 368, the Court must, "on a fuller record, determine whether a [] 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555.  If the opt-in plaintiffs are revealed not to be similarly situated, the class "may be 'de-certified'" and "opt-in plaintiffs' claims may be dismissed without prejudice."  Id.

B. Conditional Certification

The plaintiff seeks to certify a collective action with respect to the substantive claim that the defendants failed to pay the minimum wage in violation of 29 U.S.C. § 206.  The defendants oppose the plaintiff's motion, contending that the plaintiff has failed to satisfy her burden because, first, she has not identified an unlawful policy and, second, she has not established that other employees are similarly situated.

1. Unlawful Policy

a. Minimum Wage

Both state and federal law mandate that employees be paid at least a minimum hourly rate.  29 U.S.C. § 206(a)(1); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 146-1.2.  During the period

of the plaintiff's employment with the defendants, the minimum hourly wage she was required to receive under the FLSA was $7.25. 29 U.S.C. § 206(a)(1). The New York minimum wage rate was $7.25 per hour until December 31, 2013, and $8.00 per hour thereafter. 12 NYCRR § 146-1.2.

The plaintiff alleges that the defendants willfully paid her less than the minimum wage. (Compl., ¶ 28; Bittencourt Decl., ¶ 8). Specifically, Ms. Bittencourt alleges the she was not paid an hourly wage until April 2012, after which she was paid $5.00 per hour.[2] (Bittencourt Decl., ¶ 6). Ms. Bittencourt additionally states that she observed that "the defendants did not pay the [other] waiters any wages until 2012." (Bittencourt Decl., ¶ 9). The declaration of Mr. Zsolt corroborates the plaintiff's allegations that the defendants maintained a policy of paying waiters a base salary below the minimum amount mandated by both federal and state law. Mr. Zsolt alleges that the defendants paid him an hourly wage of $4.65, and he identifies four other waiters whose paystubs he saw and whom the defendants also paid an hourly wage of $4.65. (Zsolt Decl. ¶¶ 6, 8).

### i. Tip Credit

The defendants dispute that the plaintiff was not paid properly and argue that because the defendants were entitled to take a "tip credit," the wages they paid to the plaintiff and other

---

[2] Ms. Bittencourt also states she was paid an hourly wage of $4.65 for an unspecified period of time. (Memorandum in Support of Motion to Conditionally Certify Collective Action at 5; Exhibit to Bittencourt Decl.).

waiters and waitresses complied with minimum wage laws. (Memorandum of Law in Support of Defendants' Opposition to Plaintiffs' Motion for Conditional Collective Certification ("Def. Memo.") at 5). Both the FLSA and NYLL allow employers to pay tipped restaurant employees a cash wage less than the statutory minimum if the employees receive gratuities sufficient to compensate for the difference. 29 U.S.C. § 203(m); NYLL § 652(4); Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287-90 (S.D.N.Y. 2011) (stating requirements for tip allowance); Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002) (describing tip credit). In New York, an employer can claim a tip credit for restaurant workers and thus pay a cash wage as low as $5.00 per hour to a "food service worker" or $5.65 to a "service worker," "provided that the total of tips received plus the wages equals or exceeds" the current minimum wage. 12 NYCRR § 146-1.3.

"Food service workers" are employees, except delivery workers, who are "primarily engaged in the serving of food or beverages to guests, patrons or customers in the hospitality industry, including, but not limited to, waitstaff, bartenders, captains and bussing personnel; and who regularly receive[] tips from such guests, patrons or customers." 12 NYCRR § 146-3.4(a). Such employees must receive a base pay rate of no less than $5.00 per hour, "provided that the total of tips received plus the wages equals or exceeds [the applicable hourly minimum wage]. 12 NYCRR § 146-1.3(b). "Service employees" include employees, "other than

8

[] food service worker[s], who customarily receive[] tips at the rate of $1.60 on and after January 1, 2011 [and] $1.75 on and after December 31, 2013," "or more per hour."   12 NYCRR § 146-3.3. Service employees "shall receive a wage of at least $5.65 per hour . . . provided that the total of tips received plus wages equals or exceeds [the applicable hourly minimum wage]."   12 NYCRR § 146-1.3(a).

To the extent that Ms. Bittencourt qualified as a "food service worker," her base salary of $5.00[3] per hour would violate the law only if she earned less than $2.25 per hour in tips prior to December 31, 2013, and $3.00 per hour in tips thereafter.   Yet while Ms. Bittencourt makes no allegations regarding the amount of her tipped income, she represents that the defendants failed to inform her of the tip credit.   (Bittencourt Decl., ¶ 10).

## ii. Tip Credit Notice

The FLSA requires an employer who wishes to claim tip credits toward the wages of its tipped employees to "inform[] its tipped employees in advance of the employer's use of the tip credit" by providing the employee with notice of the base cash wage and the amount of the tip credit increase, including that the tip credit amount "may not exceed the value of the tips actually received by the employee;" as well as notice "that all tips received by the

---

[3] Ms. Bittencourt alleges she was paid an hourly rate of $5.00 beginning in April 2012, (Bittencourt Decl., ¶6), yet her April 13, 2012 paystub reflects a base salary of $4.65 per hour.   (Ex. to Bittencourt Decl.)   If she was paid an hourly rate of $4.65, her base salary would violate the law regardless of how much she earned in tips.

tipped employee must be retained by the employee except for a valid tip pooling arrangement; and that the tip credit shall not apply to any employee who has not been informed of these requirements." 29 C.F.R. § 531.59(b); Dorsey v. TGT Consulting, LLC, 888 F. Supp. 2d 670, 680-81 (D. Md. 2012). These requirements are "strictly construed." Id. (quoting Copantitla, 788 F. Supp. 2d at 287). New York's wage law mandates similar disclosure, stating that, "[p]rior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." 12 NYCRR § 146-2.2(a). "Such notice shall also be required prior to any change in the employee's hourly rates of pay." 12 NYCRR § 146-2.2(b).

Both the plaintiff and Mr. Zsolt allege that they were never informed of the tip credit by the defendants. (Bittencourt Decl., ¶ 10; Zsolt Decl., ¶ 6). The defendants note they took a tip credit with regards to the plaintiff and other waitstaff (Def. Memo. at 5), but do not address the plaintiff's claim that they failed to provide her notice of the tip credit. Instead, the defendants simply claim that the plaintiff failed to establish the existence of an unlawful policy because "[p]laintiff has not provided any evidence that she or Zsolt were not paid properly other than their conclusory self-serving declarations." (Def. Memo. at 5). As the plaintiff notes, however, she has provided documentary evidence in the form of pay stubs, which indicate the

defendants paid her and fellow employee Mr. Zsolt less than the minimum hourly rate. (Reply Memorandum in Support of Motion to Conditionally Certify Collective Action ("Pl. Reply") at 5). Moreover, while allegations supporting certification must be specific rather than conclusory, Morales, 2006 WL 278154, at *3, a plaintiff may satisfy her burden with personal observations, Garcia v. Spectrum of Creations Inc., ___ F. Supp. 3d ___, ___, 2015 WL 2078222, at *6 (S.D.N.Y. 2015) (rejecting defendants' argument that allegations made "solely" on personal observations were insufficient); Rosario v. Valentine Avenue Discount Store, Co., 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011) (finding unpersuasive defendants' argument that "plaintiff 'relies on nothing more than unsubstantiated and conclusory hearsay'" and noting that "courts regularly grant conditional certification of collective actions based on employee affidavits setting forth an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name"). "[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA." Colon v. Major Perry Street Corp., No. 12 Civ. 3788, 2013 WL 3328223, at *6 (S.D.N.Y July 2, 2013) (collecting cases). Indeed, as the Honorable Edgardo Ramos, U.S.D.J., recently observed in Mata v. Foodbridge LLC, No. 14 Civ. 8754, 2015 WL 3457293 (S.D.N.Y. June 1, 2015), "Defendants are wrong to suggest that Plaintiff was required to buttress his motion with affidavits besides his own or with other documentary evidence.

Rather, 'courts in this circuit have routinely granted conditional certification based solely on the personal observations of one plaintiff's affidavit.'" Id. at *3 (quoting Hernandez v. Bare Burger Dio Inc., No. 12 Civ. 7794, 2013 WL 3199292 (S.D.N.Y. June 25, 2013)). Here, both the plaintiff and Mr. Zsolt allege that the defendants never informed them of the tip credit, and this sufficiently articulates a common unlawful policy.

The defendants also claim that the plaintiff failed to establish the existence of an unlawful policy because "in the last three (3) years, Plaintiff, Zsolt, and all other waiters/waitress [sic] were paid minimum wage." (Def. Memo. at 5). The defendants' assertion of lawful behavior does not counsel against certification, however, because "[t]he focus of this inquiry [] is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); see also Pal v. Sandal Wood Barn Grill, Inc., No. 14 Civ. 00301, 2015 WL 237226, at *1 (S.D.N.Y Jan. 15, 2015) ("Defendants argue that they did not violate any federal or state labor laws, but did in fact pay full wages . . . . This argument is inapposite to the instant motion because it goes to the underlying merit of plaintiffs' claims.").

### 2. Similarly Situated

The defendants next argue that the plaintiff's motion for conditional certification should be denied because she has "failed

to provide sufficient evidence that any other similarly situated employees were subject to a common policy." (Def. Memo. at 5). The defendants claim that the plaintiff has provided insufficient information about other employees because she only partially identifies other employees and fails to provide information about manner in which other employees were paid. At the certification stage, the burden on a plaintiff, while slight, "is not non-existent and the factual showing, even if modest, must still be based on some substance." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010). "Motions for conditional certification have been denied where the only substantive allegations were nonspecific personal observations and conversations." Reyes v. Nidaja, LLC, No. 14 Civ. 9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015); see also Sanchez v. JMP Ventures, LLC, No. 13 Civ. 7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (rejecting certification where the plaintiff sought to establish a common practice of underpayment based on observations and conversations with other employees but did not provide "any detail as to a single such observation or conversation") (emphasis omitted).

Here, the plaintiff has provided sufficient detail to establish that other waiters are similarly situated. The cases cited by the defendants are all distinguishable. In Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009), for example, the plaintiff neither provided details about her alleged conversations with other employees, nor provided

13

affidavits from any other employees corroborating her claims.  Id. at *3.  Here, however, the declaration of Mr. Zsolt corroborates the plaintiff's allegations of the defendants' underpayment and failure to provide notice of the tip credit.  As noted above, at the conditional certification stage "the burden is so low that even one or two affidavits establishing the common plan may suffice." Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 445-46 (S.D.N.Y. 2013).  Secondly, both the plaintiff and Mr. Zsolt identify other waiters by name, allege these waiters were similarly paid below the minimum wage, and explain the basis for their belief.  The plaintiff states that she "know[s] that the defendants did not pay the waiters any wages until 2012 because we would speak to each other and complain about the fact that the defendants paid us no wages.  In particular, I often discussed this fact with Annamaria Parja who worked the morning shift with me." (Bittencourt Decl., ¶ 9).  To the extent these conversations occurred outside the statute of limitations under the FLSA, they are nonetheless "probative of employer's wage and hour practices and they may corroborate the claims of more recent violations." Lujan v. Cabana Management, Inc., No. 10 CV 755, 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011).  Mr. Zsolt identifies by first name four other waiters who "all shared a similar schedule with me" and who he knows were also paid $4.65 per hour "because I saw their paystubs."  (Zsolt Decl., ¶ 8).  Such specifics were lacking in Qing Gu v. T.C. Chikurin, Inc., No. 13 CV 2322, 2014 WL 1515877 (E.D.N.Y. April 17, 2014), where the plaintiffs "fail[ed] to

provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations about not receiving minimum wage or overtime compensation." Id., at *3.   While neither the plaintiff nor Mr. Zsolt provide extensive detail about conversations with fellow waiters, taken together, their allegations are sufficient evidence that waiters are similarly situated with respect to the defendants' alleged common policy of not paying the minimum wage. Compare Garcia, __ F. Supp. 3d at __, 2015 WL 2078222, at *6 (certifying limited collective action where affidavits of two employees "corroborate[d] each others' personal treatment and observations of the treatment of other employees" and noting that "[w]hile it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics"), with Reyes, 2015 WL 4622587, at *2 (denying certification where plaintiff did not "identify any of the other employees by name[,] indicate the time or circumstances surrounding his observations", or "state that he had conversations with any other employee regarding their [sic] treatment, pay, job duties, or responsibilities").

However, the defendants are correct that the plaintiff's allegations about other classes of employees are insufficiently detailed to merit conditional certification.   To the extent she seeks to include all non-exempt employees in the putative class, the plaintiff has not established the required factual nexus and the proposed class is overbroad.   Ms. Bittencourt provides little

15

information about busboys, baristas, counter attendants, hostesses, and chefs beyond identifying them as potential class members. First, she does not provide information about the type of work performed by these various categories of potential opt-in plaintiffs. Second, with the exception of the baristas, who make more than the minimum wage, it is unclear what these employees' base salary is or whether they are tipped employees. Finally, the information provided about non-waiters relates only to those employees' potential overtime claims. Ms. Bittencourt does not herself allege overtime violations and is therefore not similarly situated to categories of employees who allegedly suffered only such violations. Certification is not appropriate where putative plaintiffs are potentially subject to separate unlawful policies involving different FLSA violations. For example, in <u>Jeong Woo Kim</u>, 985 F. Supp. 2d at 451, the plaintiff established he was situated similarly to the other kitchen staff members, but was unable to demonstrate a sufficient factual nexus between himself and all other non-exempt staff because "unlike the kitchen staff members, the other employees were paid at an hourly rate . . . . Thus, even if these employees were to pursue FLSA claims against the Defendants, the legal and factual theories under which they would proceed would be entirely different than those pressed by [the plaintiff] and the other kitchen staff members."

Therefore, while the plaintiff has met her burden with regard to individuals employed as waiters, she has not established the requisite factual nexus with other members of the putative

16

collective action.  See Garcia, ___ F. Supp. 3d at ___, 2015 WL
2078222, at *7; She Jian Guo v. Tommy's Sushi Inc., No. 14 Civ.
3964, 2014 WL 5314822, at *3-4 (S.D.N.Y. Oct. 16, 2014).
Accordingly, the Court should grant the plaintiff's motion for
conditional certification, but only as to individuals employed as
waitstaff.

    C. Notice to Potential Opt-in Plaintiffs

    As part of her motion for collective action certification, the
plaintiff requests that the Court order notice be issued to all
potential collective action members.  Although the FLSA has no
provision for issuing notice in a collective action, it is well
settled that district courts have the power to authorize a
plaintiff to send such notice to other potential plaintiffs.  See
Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d
335, 336 (2d Cir. 1978) (per curiam) (court-authorized notice
"comports with the broad remedial purpose of the [FLSA], . . . as
well as with the interest of the courts in avoiding multiplicity of
suits"); Hoffmann, 982 F. Supp. at 261.  "When exercising its broad
discretion to craft appropriate notices in individual cases,
District Courts consider the overarching policies of the collective
suit provisions" and ensure that putative plaintiffs receive
"accurate and timely notice concerning the pendency of the
collective action, so that they can make informed decisions about
whether to participate." Fasanelli v. Heartland Brewery, Inc., 516
F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (quoting Hoffman-La Roche,
Inc. v. Sperling, 493 U.S. 165, 170 (1989)).  The plaintiff has

submitted a proposed notice, to which the defendants object in various respects.  The plaintiff should be permitted, subject to the modifications detailed below, to send notice to the revised putative class of waitstaff.

      1. <u>Notice Period</u>

      Under the FLSA, the statute of limitations is three years for willful violations and two years for non-willful violations.  29 U.S.C. § 255(a).  When willfulness is disputed, courts typically apply the three-year limitations period in defining the scope of a collective action.  <u>See, e.g.</u>, <u>Hamadou v. Hess Corp.</u>, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013).  The defendants have not challenged use of the three-year period for conditional certification, but object to how the plaintiff calculates that period.  The defendants argue that the Court should "order notice be sent to prospective class members who were employed by Defendants three (3) years preceding the date of the Court's Order granting Plaintiff's motion for conditional collective action (not preceding the date of the filing of the Complaint)." (Def. Memo. at 11).  The defendants are correct that, because the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that individual opts into the action, notice is generally directed to those employed within three years of the date of the mailing of the notice.  <u>See</u> 29 U.S.C. §§ 255, 256; <u>Whitehorn v. Wolfgang's Steakhouse, Inc.</u>, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).  On the other hand, "because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice

18

to be keyed to the three-year period prior to the filing of the
complaint, 'with the understanding that challenges to the
timeliness of individual plaintiff's actions will be entertained at
a later date.'" Hamadou, 915 F. Supp. 2d at 668 (quoting Winfield
v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y 2012)); see
also Slamna v. API Restaurant Corp., No. 12 Civ. 757, 2013 WL
3340290, at *4 (S.D.N.Y. July 2, 2013); Raimundi v. Astellas U.S.
LLC, No. 10 Civ. 5240, 2011 WL 5117030, at *2 (S.D.N.Y. Oct. 27,
2011).  On that basis, it is appropriate to calculate the
three-year period for notice from the filing of the complaint.

   2. Opt-in Period

   The plaintiff proposes that opt-in notices be returned within
90 days of the date of an order granting conditional certification.
The defendants "request that the opt-in notices must be returned to
the Court within 45 days from the date on which conditional
certification is granted," noting that courts generally restrict
the opt-in period to 45 to 60 days.  (Def. Memo. at 11).  In
response, the plaintiff merely suggests that 90 days is appropriate
"because there are often challenges and delays in obtaining a
complete list of employees from defendants." (Pl. Reply at 12).
"While some courts have granted up to 90 day opt-in periods, they
generally do so where the period is agreed upon between the parties
or special circumstances require an extended opt-in period."
Whitehorn, 767 F. Supp. 2d at 452 (collecting cases).  Here, the
plaintiff has not identified circumstances that would require an
extended period.  Accordingly, the plaintiff should be required to

amend the notice to provide for opt-in plaintiffs to consent to
join the action within 60 days of the date of the notice.

### 3. <u>Notice Language</u>

Standard notice includes

the purpose of the notice, the nature of the lawsuit, the
proposed class composition, the legal effect of joining the
lawsuit, the fact that the court has not taken any position
regarding the merits of the lawsuit, how to join the lawsuit,
the purely voluntary nature of the decision and the legal
effect of not joining the lawsuit, the prohibition against
retaliation, and the relevant contact information for any
inquiries.

<u>Jackson v. Bloomberg, L.P.</u>, 298 F.R.D. 152, 169-70 (S.D.N.Y. 2014).

Notice should also "advise potential plaintiffs that they may be

required to provide information, appear for a deposition, or

testify if they opt in." <u>Id.</u>; <u>see also</u> <u>Salomon v. Adderley</u>

<u>Industries, Inc.</u>, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012).

The defendants raise various objections to the information

provided in the proposed notice.  The defendants first request the

inclusion of additional details about their position with respect

to the litigation, including that they "anticipate moving to

decertify the collective action at the close of discovery." (Def.

Memo at 11-12).  The plaintiff objects to the defendants' proposed

modification on the grounds that the defendants "are merely using

the inclusion of this language as bluster." (Pl. Reply at 13).

The proposed notice currently includes the following language:

"Ferrara denies that it violated the law, that it owes any employee

any additional compensation, and that it owes liquidated damages."

(Proposed Notice at 2).  This language is sufficient.  <u>See</u> <u>Delaney</u>

<u>v. Geisha NYC</u>, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (approving

20

statement that the defendant "denies that they violated the Fair Labor Standards Act").

The defendants also request that the notice contain language explaining the consequences of joining the action. (Def. Memo at 12). Some of the information that the defendants request be added is already included under the section entitled "Effect of Joining this Lawsuit." For example, the proposed notice states that "[i]f you chose to join in the lawsuit, you may be asked to appear for a deposition, respond to discovery requests, and appear at trial." (Proposed Notice at 3). Therefore, the only additional information that the defendants seek to include is that "the putative class members may be required to . . . pay costs to defendants if they do not prevail." (Def. Memo. at 12). While some courts have permitted similar notice, Hallissey v. America Online, Inc., No. 99 Civ. 3785, 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008), others have found language about potential costs to be inappropriate "'[g]iven the remote possibility that such costs for absent class members would be other than de minimis,' and the risk of 'an in terrorem effect that is disproportionate to the actual likelihood that costs . . . will occur in any significant degree,'" Rosario, 828 F. Supp. 2d at 520 (alterations in original) (quoting Guzman v. VLM, Inc., No. 07 CV 1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007)). This rationale is persuasive. Accordingly, the defendants' request to include reference to potential costs for opt-in plaintiffs should be rejected.

The defendants next request that the Court strike the anti-

retaliation language included in the proposed notice, arguing that "there is no evidence of retaliation, and therefore, there is no need for the inclusion of anti-retaliation language." (Def. Memo. at 13). The text in question, which is placed beneath the heading "RETALIATION UNLAWFUL," reads:

> It is a violation of federal law to in any manner retaliate against you for participating in this lawsuit. If you believe you have been retaliated against in any manner as a consequence of your receiving this notice, considering whether to join this lawsuit, or actually joining this lawsuit, you should contact the named plaintiff's attorney or an attorney of your choosing.

(Proposed Notice at 4). A statement concerning the prohibition on retaliation, such as the one proposed here, is appropriate. See Salomon, 847 F. Supp. 2d at 566 (quoting ABA, The Fair Labor Standards Act, 19-78-79 (Ellen C. Kearns et al. eds., 2d ed. 2010)).

Lastly, the defendants request that their counsel's name, address, and telephone number be included on the notice. (Def. Memo. at 13). The plaintiff objects to the inclusion of this information on the grounds that the "defendants offer no suggestions in their argument for this modification." (Pl. Reply at 14). However, "[c]ourts in this Circuit have generally concluded that [the contact information of defendants' counsel] is appropriate for inclusion in a notice of collective action." Slamna, 2013 WL 3340290, at *5 (citing cases). Therefore, it should be included. See Whitehorn, 767 F. Supp. 2d at 451 (finding defendant's request to include defense counsel's contact information to be "reasonable," but requiring information to be

placed in separate section entitled "Attorneys for Defendants").

### 4. Translation of Notice

The plaintiff has proposed translating and sending the Notice and Consent to Become Party Plaintiff form in English and Spanish. (Proposed Order, ¶ 4). The defendants do not object, and the notice of and consent form should therefore be translated and published in English and Spanish.

### 5. Request to Post Notice

The plaintiff requests that the Court order the defendants to post the notice in the workplace, "including wherever statutory notices are posted." (Proposed Order, ¶ 7). The defendants object, arguing that posting notice, in addition to mailing it, is "unwarranted." (Def. Memo. at 13-14). However, "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." Whitehorn, 767 F. Supp. 2d at 449 (collecting cases). Although the defendants argue that posting notice is repetitive where defendants provide accurate contact information for potential collective action members, they "do not explain how such a posting would be more burdensome in this case." Id. Moreover, "[p]osting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629, 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 16, 2013); see also Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (rejecting as

23

"unpersuasive" defendant's argument that posting notice "will be unnecessarily disruptive and will start a conversation among employees" and noting that "[a] purpose of notice is to start a conversation among employees, so as to ensure that they are notified about potential violations of the FLSA and meaningfully able to vindicate their statutory rights."); Jackson, 298 F.R.D. at 169-70 (identifying delivery by mail, e-mail and posting by employer in conspicuous place where putative plaintiffs are employed as methods of delivery common in wage and hour actions). Thus, the defendants should be required to post notice.

    D. Production of Employee Information

The plaintiff requests that the Court order the issuance of notice to all putative collective action members. To facilitate the dissemination, the defendants should be required to provide to plaintiff's counsel the names and last known addresses of the potential opt-in plaintiffs. See Hoffmann-La Roche, 493 U.S. at 170; Realite, 7 F. Supp. 2d at 309-10; Whitehorn v. Wolfgang's Steakhouse, Inc., No. 09 Civ. 1148, 2010 WL 2362981, at *3 (S.D.N.Y. June 14, 2010) (allowing pre-certification discovery and ordering production of putative class members' names, addresses, and last known telephone numbers).

Conclusion

For the reasons set forth above, the plaintiff's motion for collective action certification (Docket No. 20) is granted in part, as set forth above, and the proposed notice, as modified, shall be disseminated. Within two weeks of the date of this order, the

defendants shall produce the names, last known addresses, and dates of employment of all waitstaff employed by the defendants at any time since January 22, 2012.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      September 25, 2015
            New York, New York


Justin A. Zeller, Esq.
Brandon D. Sherr, Esq.
John Guerrieri, Esq.
Law Office of Justin A. Zeller
277 Broadway, Suite 408
New York, NY 10007

Jospeh M. Labuda, Esq.
Matthew A. Brown, Esq.
Milman Labuda Law Group PLLC
3000 Marcus Ave., Suite 3W8
New Hyde Park, NY 11042